were an employee." It appears from the evidence that the defendant company was using the tracks of the Baltimore & Ohio Railroad Co., and presumptively by the latter's permission, and hence at the time and place of the accident, they must be considered the property of the defendant. The plaintiff, an employee of the Baltimore & Ohio Railroad Co. and then engaged in its service, was therefore not employed on or about the defendant's road and was not a quasi employee of the defendant company within contemplation of the act of 1868. The facts of the case bring this branch of it within the doctrine of Kelly v. Union Traction Co., 199 Pa. 322, and Keck v. Philadelphia & Reading R. R. Co., 206 Pa. 501.

The judgment is affirmed.

---

# Tetlow *v.* Rust, Appellant.

*Equity—Fraud—Trusts and trustees—Trustee ex maleficio—Mortgage —Defeasance.*

Where a person professing to be a friend of two partners advances to them about $200 to pay some pressing debts, and takes from them a bill of sale for $6,000 worth of machinery and material, and a deed for real estate of the value of $2,500, and it appears that the deed was to be signed by the two partners and their wives, but that one of the wives had refused to sign it, although the notary with whom it had been left falsely certified that she had acknowledged it, the person taking the deed and bill of sale will be declared a trustee ex maleficio, and will be compelled to surrender the papers on repayment to him of the advances which he has made.

Argued Jan. 14, 1910. Appeal, No. 287, Jan. T., 1909, by defendant, from decree of C. P. No. 2, Phila. Co., March T., 1908, No. 6,024, on bill in equity in case of William Tetlow and John H. Broadfield, trading as Tetlow & Broadfield, v. Alfred J. Rust. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Bill in equity for the cancellation of a bill of sale, reconveyance of real estate and satisfaction of a judgment.

WILTBANK, J., filed the following opinion:

I find the facts as follows:

1. That the plaintiffs, John H. Broadfield and William Tetlow, were engaged in the business of conducting a machine shop at the southeast corner of Norris and Mascher streets, the city of Philadelphia, and had been so engaged for about twenty-five years last past, and that there has been no dissolution of said copartnership.

2. That the property of said copartnership consisted,—

(a) Of certain real estate on which its shop is located, situate at the southeast corner of Norris and Mascher streets, in the city of Philadelphia, of the value of about $2,500, in excess of the incumbrances thereon, amounting to $3,500.

(b) Of certain tools, implements and machinery, the value of which is in excess of $3,000.

(c) Of certain stock and material on hand, of the value of about $3,000.

3. That on or about May 21, 1908, the firm was indebted to various persons to the amount of about $600, and that a magistrate's suit had been instituted against them on a claim for insurance premiums, the amount of which was disputed.

4. The defendant, Alfred J. Rust, was a personal friend of William Tetlow, one of the partners, and learned of the suit pending before the magistrate, and then proposed, as Tetlow's friend, to assist the firm by advancing them certain moneys to pay their obligations.

5. The apparent purpose of the defendant was to advance moneys to the plaintiffs to help them pay their debts, and not to buy out their business establishment.

6. That plaintiff firm was not in such financial straits as rendered it necessary for them to sell their tools, machinery and real estate to the defendant to extricate themselves from debt.

7. In a conference between the parties it was stated that the firm's obligations approximated $600, and the defendant stated that he would advance that sum or as much thereof as might be necessary, to the firm, taking as security therefor a judgment note and bill of sale for the tools, implements and machinery and a conveyance of the real estate.

8. That the judgment note was given under date of May 21, 1908, for the sum of $600.

9. In a subsequent conference it was suggested by defendant that $500 would probably be more than sufficient to settle with the creditors, as he could doubtless compromise some of the bills. He therefore made out his check for that amount to the order of the firm and after securing the indorsement of John H. Broadfield thereto, had the check cashed and himself obtained the proceeds.

10. The plaintiffs, placing implicit confidence in the integrity of the defendant, also gave him a power of attorney, authorizing him to make adjustments with their creditors.

11. Of the amount thus obtained by the defendant or charged by him against the firm, the defendant paid out the sum of $279.90 in settlement of the firm's obligations, including a debt of $28.00 due the defendant himself.

12. That the defendant also collected for the firm the sum of $213.89 from the sale of scrap iron, and so forth, in the shop, from which amount he claims to have expended the further sum of $160.16 for their benefit, leaving the net amount actually laid out and expended by the defendant for the plaintiff firm of $279.90 plus $160.16, less $213.89 additional moneys received, or $226.17.

13. That the defendant never laid out or expended for payment of obligations of the firm any sum in excess of the net amount of $226.17.

14. That the deed which it was also intended should be given to the defendant by the plaintiffs as a part of the transaction, was not signed, sealed or acknowledged by Caroline S. Broadfield, one of the parties named therein.

15. That the certificate of acknowledgment, reciting that Caroline S. Broadfield acknowledged said deed, is false.

16. That the deed was left with William B. Davis, notary public, who was there to take the acknowledgments pending execution by Mr. Broadfield, and that there was no authorized delivery thereof by the plaintiffs to the defendant.

17. It was not intended by the parties at the time the deed was signed by John H. Broadfield that the transaction should

be treated as completed before obtaining the signature and acknowledgment of Mrs. Broadfield.

18. Before the filing of this bill, the plaintiff, John H. Broadfield, demanded of the defendant an accounting of what moneys he had expended on behalf of the firm and offered to pay him whatever moneys he had so advanced, with interest thereon.

19. By reason of the superior knowledge of the defendant and his overmastering influence over the plaintiffs, and by reason of their weakness and dependence or trust justifiably reposed in the defendant, the parties did not deal on equal terms, and the situation thus shown makes it apparent that an unfair advantage in the transaction was taken by the defendant.

### CONCLUSIONS OF LAW.

1. The bill of sale and incompleted deed under the circumstances shown were not in law an absolute transfer of the tools, machinery and real estate of the copartnership to the defendant, but were only operative as security for the payment of moneys advanced by the defendant for the firm, with interest thereon.

2. The defendant's declaration in the third paragraph of paragraph five of his answer, that he was to "advance any additional money (in excess of the $600 alleged to be the consideration for the tools, machinery and real estate) which should be necessary for that purpose (i. e., adjusting and paying off the firm's creditors) not exceeding $1,000," is corroborative evidence in support of plaintiff's contention and testimony that the bill of sale, judgment note and deed were intended as security only for moneys advanced by the defendant.

3. The defendant's admission in paragraph seven of his answer that he agreed not to record the deed for the real estate for a period of three months, and to give plaintiffs an opportunity to sell it for their own advantage, at a price in excess of the amount defendant alleges he paid for it, viz.: $100,—is further corroborative of plaintiffs' contention that an absolute sale was not intended.

4. In this case fraud is presumed on the part of the defendant and the transaction is presumed to be void because the evidence shows that the defendant's relation towards the contracting parties appears to have been of such a character as to render it certain that the parties did not deal on equal terms, but that the defendant, by his superior knowledge and overmastering influence and the dependence and trust justifiably reposed in him by the plaintiffs, obtained an unfair advantage over the plaintiffs in the transaction.

5. It is incumbent upon the defendant in whom such confidence was reposed to establish affirmatively that no deception was used, and that all was fair, open, voluntary and well understood.

This the defendant has failed to do.

6. Defendant's declaration that he intended to lease the firm the property he claimed to have acquired from them for their own protection, is evidence of the scheme of fraud defendant was attempting to practice on plaintiffs.

7. Inadequacy of consideration is presumptive evidence of fraud; and there was such inadequacy of consideration in this transaction as to render the alleged sale of the tools, machinery and real estate unconscionable and therefore void.

8. The defeasance act of 1881 has no application to the facts appearing in the present case, because the deed offered by the defendant is not "regular and absolute" on its face.

(*a*) Because it is not signed and sealed or acknowledged by all of the parties by whom it purports to be given.

(*b*) On its face it bears witness of an incompleted transaction.

(*c*) The certificate of acknowledgment is not in accordance with the signature of the parties.

(*d*) The certificate of acknowledgment is admittedly false.

(*e*) There was no delivery of the deed to the defendant; leaving the deed with the notary pending execution by all of the parties is not a delivery.

9. Where fraud is shown in the transaction the defeasance act of 1881 has no application.

10. By reason of the circumstances in this case the defendant is a trustee ex maleficio for the plaintiffs.

A decree was entered in accordance with the prayers of the bill.

*Error assigned* was the decree of the court.

*Thomas F. Gain*, for appellant.—The conclusion of the learned trial judge that fraud is presumed under the circumstances of this case, and that the burden was upon the defendant to disprove it, was error: Colonial Trust Co. v. Hoffstot, 219 Pa. 497; Frey's Est., 223 Pa. 61; Graham v. Pancoast, 30 Pa. 89; Walker v. Walker, 67 Pa. 185.

*Fred. Taylor Pusey*, for appellee, cited: Sweetzer's App., 71 Pa. 264; Rhines v. Baird, 41 Pa. 256; Heath's App., 100 Pa. 1; Logue's App., 104 Pa. 136; Saunders v. Gould, 134 Pa. 445; Stepp v. Frampton, 179 Pa. 284; Hasel v. Beilstein, 179 Pa. 560.

PER CURIAM, February 21, 1910:

The decree is affirmed at the cost of the appellant on the findings of fact and conclusions of law by Judge WILTBANK.

----

# Corbitt, Appellant, *v.* Philadelphia Rapid Transit Company.

*Negligence—Street railways—Bridge—Contributory negligence.*

In an action against a street railway company to recover damages for personal injuries, a nonsuit is properly entered where it appears that the plaintiff who was injured in crossing a bridge over which the defendant ran two tracks, instead of using a safe sidewalk on one side of the bridge, walked along a narrow converging path on the other side of the bridge between the outer track and bridge rail, that the night was dark; that the car was lighted brilliantly within with headlights in front; that the region was suburban; and that the car was running rapidly with no gong sounding, there being no crossing near, and the track in front clear.